## NORTHERN CENTRAL RAILWAY COMPANY *v.* MARYLAND.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 43. Argued October 16, 1902.—Decided December 1, 1902.

1. When a Maryland corporation, chartered in 1827, and possessing certain immunities from taxation, which under the then constitution might have been irrepealable, becomes merged with other corporations in an entirely new corporation possessing new rights and franchises created after the adoption of the constitution of 1850, under which the legislature has power to alter and repeal charters of, and laws creating, corporations, the right of exemption, if it ever passed to the new corporation, is subject to the right of repeal, and hence is not protected from repeal by the contract clause of the Federal Constitution.

2. An act of the legislature compromising litigation between the State and such new corporation arising from the claim of the latter that it was exempt from taxation under the immunities at one time possessed by one of its constituent corporations, and fixing a rate of taxation to be paid annually thereafter by the new corporation, cannot be regarded as a legislative contract granting an irrepealable right forbidden by the then existing constitution of the State. If, therefore, the legislature subsequently passes another act fixing a higher rate of taxation, and the highest court of the State decides that such act repeals the former act and subjects the corporation to the higher rate of taxation, the later act is not bad as impairing the obligation of contracts within the purview of the Constitution of the United States as the compromise, when made, was subject to the right to repeal, reserved by the constitution of the State at that time.

THE Baltimore and Susquehanna Railroad Company was chartered by an act of the legislature of Maryland in 1827, with authority to construct a railroad from the city of Baltimore to the Susquehanna River. The charter contained a provision declaring that the " shares of the capital stock of the company should be deemed and considered personal estate, and should be exempt from the imposition of any tax or burden." It was conceded by both parties in the discussion at bar that the effect of this provision, as interpreted by the settled adjudications of the State of Maryland, was to forever exempt the company and

its property from taxation. It was also conceded that at the time this act was passed there was no provision in the constitution of the State of Maryland restricting the legislative power to exempt, and that no reservation of the power to repeal, alter, or amend was found in the constitution of the State, or expressed or implied in the charter in question. In 1854 an act was passed by the Maryland legislature, designated as chapter 250 of the laws of that year. The title of this act was as follows: ··

" An act to authorize the consolidation of the Baltimore and Susquehanna Railroad Company with the York and Maryland Line Railroad Company, the York and Cumberland Railroad Company, and the Susquehanna Railroad Company, by the name of the Northern Central Railway Company."

The companies referred to in this title other than the Baltimore and Susquehanna Railroad were corporations owing their existence to charters granted by the legislature of Pennsylvania, and which were operating railroads in that State connecting with the Baltimore and Susquehanna. The effect of the consolidation was to create one corporation owning and operating one line of railroad from and across the State of Maryland into and across the State of Pennsylvania. The act of 1854 authorizing the consolidation, the title of which has just been stated, by its first section empowered the stockholders of the Baltimore and Susquehanna Railroad, upon their acceptance of the act, " to unite and consolidate their company or corporation with the York and Maryland Line Railroad Company, the York and Cumberland Railroad Company and the Susquehanna Railroad Company in the State of Pennsylvania, so as to form and constitute one company or corporation, to be called the Northern Central Railway Company, on such terms and conditions, and conformably to such agreements and regulations as the said several companies shall respectively determine and adopt, subject nevertheless to the following general provisions: First, that all existing contracts, engagements and liabilities of the said Baltimore and Susquehanna Railroad Company shall continue to bind said company and its property as fully as before the consolidation herein above authorized, or that the said existing contracts, engagements and liabilities shall be duly adopted and

assumed by the consolidated company except as herein expressly altered or rescinded ; second, that all laws heretofore made in reference to the said Baltimore and Susquehanna Railroad Company and not repealed or modified by the legislature of Maryland, and all ordinances relating to said company heretofore made and not repealed by the mayor and city council of Baltimore, shall be binding and operative upon the said consolidated company, so far as its property or its operations may be within the jurisdiction of the State of Maryland or the city of Baltimore respectively, and so far as the laws or ordinances may be applicable to, and consistent with the new organization of the said consolidated company ; third, that the consolidated company shall have power from time to time to establish its capital stock at an amount not exceeding eight millions of dollars, the same to be represented by such number of shares as the said consolidated company may determine, and that the said consolidated company shall have power to issue their bonds convertible into stock on such terms as the company may prescribe, and to secure the same by one or more mortgages, for any such amounts as they may find necessary for paying off any existing debt or engagement of the company."

After providing for a board of directors and officers of the new or consolidated company, the act proceeded to say : " That the company shall make and use a common seal, and possess all the corporate powers and privileges, and be subject to all the duties and obligations not inconsistent with this act, and its general intent, which are expressed in the charter heretofore granted to the said Baltimore and Susquehanna Railroad Company, and its supplements : *Provided*, That this clause shall not be construed to deprive the parties to the said consolidated company of the right or authority to make such provisions and regulations, notwithstanding said original charter and its supplements, as may be necessary to create and establish said consolidated company, and bring its organization into agreement and consistency with the terms and conditions of the charter of the several companies of which the said consolidated company shall be composed : *And provided also*, That the parties to the consolidated company shall be authorized and empowered to adopt

and conform the organization of the said consolidated company to such provisions or enactments as may be required by the legislature of the State of Pennsylvania, touching the name of said corporation, and the construction of the board of president and directors in said consolidated company, and the conditions relating to their appointments."

The second section of the act, among other things, provided that " This act shall take effect whenever and as soon as the said parties hereinbefore referred to shall have agreed to consolidate their several companies into one, and shall have settled, determined and agreed upon the terms and conditions of such consolidation in conformity with the provisions of this act. . . . "

In pursuance of the authority thus conferred upon the Maryland corporation, and in virtue of power granted by the legislature of Pennsylvania to the three Pennsylvania corporations, the consolidation was effected, new stock was issued, and a company came into being known as the Northern Central Railway Company, whose affairs were managed by the new board of directors and officers elected or appointed pursuant to the new charter. The corporation, in availing itself of the provisions of the law of 1854, executed articles of consolidation. Although the act of 1854 only provided that the new corporation should have the corporate " powers and privileges " of the constituent bodies, it is stated in argument that the articles of consolidation executed under the law purported to vest the new corporation with not only the right to the property rights and privileges of the old companies but also with their *immunities*. In 1854, at the time the act of consolidation was passed, the Maryland constitution of 1850 was in force, and provided in section 47, article 5, as follows :

" That corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes ; and in cases where in the judgment of the legislature the object of the corporation cannot be attained under general laws. All laws and special acts pursuant to this section may be altered from time to time or repealed."

In the years 1872 and 1874 the legislature of Maryland passed

an act imposing a tax of one half of one per cent upon the gross receipts of all steam railroad companies incorporated by the State and doing business therein. Two suits were thereafter (the one in 1873 and the other in 1874) brought by the State of Maryland against the Northern Central Railway Company to recover the one half of one per cent tax upon the gross receipts of that company from that part of its railroad lying in the State of Maryland. The defence of the company was substantially, first, that it was entitled to the exemption from taxation granted by the act of 1827 to the Baltimore and Susquehanna Company ; that such exemption was existing and had not been repealed, and if repealed, the repealing act was void because an impairment of the obligations of the contract resulting from the act of 1827 and the transmission of its immunities to the new company created by the act of 1854. The causes were decided in the trial court in favor of the corporation. The cases were taken to the Court of Appeals of the State of Maryland. That court (in 1875) reversed the judgment of the court below and remanded the cases for a new trial. The Court of Appeals in its opinion conceded that when in 1827 the charter of the Baltimore and Susquehanna Railroad Company was granted there was no restriction in the constitution of the State on the power of the general assembly to make a contractual exemption from taxation. It also conceded that at that time there was no general power reserved in the constitution to repeal, alter or amend charters, and that no such reservation was found in the charter of 1827. But the court deemed it unnecessary to pass upon the question of whether the consolidation act of 1854 had endowed the new company with the exemption from taxation expressed in the act of 1827, because, conceding *arguendo* this to have been the case, it was held that as the consolidation had created a new company with new stock, new franchises, new rights and new officers, the charter of such newly created company as to all its provisions, including the exemption from taxation, if such exemption were found in it expressly or by implication, was subject to the power to repeal, alter and amend reserved by the constitution. Construing the acts imposing the taxes which were sued for in connection with

other laws of the State of Maryland, the court held that the exemption from taxation had been repealed. 44 Maryland, 131, 162.

The cause on being remanded to the trial court remained untried in 1880. In that year the legislature of Maryland passed an act on the subject of the taxation of the Northern Central Railway Company. The title of that act purported to adjust and settle finally by agreement all pending controversies on the subject of taxation between the State of Maryland and the railroad company. The preamble referred to and recapitulated the organization of the Baltimore and Susquehanna, the consolidation by the act of 1854, and the pending suits on the subject. The title and preamble are reproduced in the margin.[1]

---

[1] An act to adjust and settle finally, by agreement, all pending controversies between the State of Maryland and the Northern Central Railway Company, by subjecting the franchises and property of said company within this State to taxation for state purposes to a certain extent, and by providing for the payment of a certain indebtedness claimed by the State of Maryland to exist on the part of said Northern Central Railway Company to said State of Maryland, being an act supplementary to the act of eighteen hundred and fifty-four, chapter two hundred and fifty, entitled An act to authorize the consolidation of the Baltimore and Susquehanna Railroad Company with the York and Maryland Line Railroad Company, the York and Cumberland Rail Company, and the Susquehanna Railroad Company, by the name of the Northern Central Railway Company.

Whereas, a controversy has arisen and exists between the State of Maryland and the Northern Central Railway Company in reference to the rights of the State of Maryland to subject to taxation the franchises and property of the Northern Central Railway Company, the said company claiming exemption of the same from taxation upon the grounds that among the terms and conditions of the union and consolidation of the several companies by which said Northern Central Railway Company was formed is one, that the latter should have all the rights, privileges and immunities of each of said companies, which said terms were entered into under the authority given by the act of Maryland of eighteen hundred and fifty-four, chapter two hundred and fifty, which moreover declared that said Northern Central Railway Company should have all the powers and privileges expressed in the charter granted by the State of Maryland to the Baltimore and Susquehanna Railroad Company, among which privileges was immunity from taxation.

And whereas, the State of Maryland having, by the act of eighteen hun-

By the first section of the act it was provided that the North-ern Central Railway Company " shall have and possess all the powers, rights, privileges and immunities and be subject to all the duties and obligations which are expressed in the act of as-sembly of Maryland of 1827, chapter seventy-two, entitled An act to incorporate the Baltimore and Susquehanna Railroad Company, but all the franchises and property of every descrip-tion and gross receipts of said Northern Central Railway Com-pany, within the State of Maryland, shall be subject to taxation for state purposes to the extent of an annual tax of one half of one per centum upon the gross receipts from its railroad and franchise lying within the State of Maryland, and from all other sources within this State, and said franchises, property and gross receipts shall not be subject to any other tax under the laws of the State of Maryland; . . ." The act further provided for the payment of a designated sum by the railroad company for past taxes, declared said payment should acquit such taxes, and directed the discontinuance of all suits pending against the company for such taxes. It was however provided that its provisions should not be operative until the payment which the act required had been made and until the acceptance

---

dred and seventy-two, chapter two hundred and thirty-four, and the act of eighteen hundred and seventy-four, chapter four hundred and eight, im-posed an annual tax of one half of one per centum on the gross receipts of all railroad companies worked by steam incorporated by or under the au-thority of said State of Maryland, and claiming that under said acts the gross receipts of said Northern Central Railway Company are liable to said tax, have instituted suits to recover the same.

And whereas, the property of said company has been also assessed as liable to taxation for county and municipal purposes.

And whereas, the said company has the right to have the question at is-sue between it and the State of Maryland carried to the Supreme Court of the United States to be there decided.

And whereas, it has been represented to this general assembly that what would be the ultimate decision of said question is a matter of great doubt, and it is deemed to be moreover just and proper that an equitable settle-ment should be made of the matters so in controversy, and it having been represented to this general assembly that the said Northern Central Rail-way Company, for the purpose of making such settlement, is willing to pay a tax of one half of one per centum on the gross receipts within this State, upon the terms and conditions hereinafter set forth; now, therefore—

of the provisions of the act by the stockholders of the company. The act was accepted, the money was paid and the suits were discontinued. At the time of the passage of this act of 1880 the constitution of Maryland of 1867 was in force, and therein it was provided (article 3, section 48): "Corporations may be formed under general laws; but shall not be created by special act, except for municipal purposes and except in cases where no general laws exist providing for the creation of corporations of the same general character, as the corporation proposed to be created; and any act of incorporation passed in violation of this section shall be void. . . . . All charters granted, or adopted, in pursuance of this section and all charters heretofore granted and created, subject to repeal or modification, may be altered, from time to time, or be repealed." In accordance with the act of 1880 the company year by year paid the tax on its gross receipts.

In 1890 the State of Maryland passed a general law entitled " An act to provide for state taxation on the revenues of railroad, telegraph or cable, express or transportation, telephone, parlor car, sleeping car, safe deposit, trust, guaranty, fidelity, oil or pipe line, title insurance, electric light or electric construction companies incorporated under any general or special law of this State and doing business therein." By this act a tax of one per centum was imposed upon the gross receipts " of all railroad companies worked by steam incorporated by or under the authority of this State and doing business therein." Under the asserted authority of this statute a tax of one per cent was levied by the State in each of the years 1891 to 1895, both inclusive, upon the gross receipts of the Northern Central Railway Company for the year preceding, and these taxes were paid by the company under protest. Upon demand, however, being made in 1896 for payment of the tax of one per cent upon the gross receipts for the year 1895, compliance was refused. A tender by the company of the taxes, calculated at the rate of one half of one per cent, was refused by the State, and the present action was thereupon brought to recover the taxes thus asserted to be due and payable under the act of 1890. The company defended on the ground that the act of 1880 was a con-

tract protecting it from a higher rate of tax on its gross receipts than in that act specified; that the act had not been repealed; that if repealed the repealing statute was void, because it impaired the obligations of the contract resulting from the act of 1880. There was judgment in favor of the corporation. The case was taken to the Court of Appeals of the State of Maryland and the judgment was reversed, the court holding that the provisions of the act of 1880 had been repealed by state statutes to which it referred, and that the repeal did not violate the Constitution of the United States by impairing the obligations of the contract, as asserted by the company, because the corporation held its rights subject to the power to repeal, alter and amend, as reserved in the constitution at the time both the acts of 1854 and 1880 were passed. 90 Maryland, 447. The case was remanded for a new trial. It was again tried, the Federal defence of the impairment of the obligation of the contract was again specially urged, the case was decided against the corporation, was taken again to the Court of Appeals of the State of Maryland. That court, adhering to its former view, affirmed the judgment. It is to this judgment that the present writ of error is prosecuted.

*Mr. Bernard Carter* for plaintiff in error.

*Mr. George R. Gaither* and *Mr. Louis E. McComas* for defendant in error.

Mr. JUSTICE WHITE, after making the foregoing statement of the case, delivered the opinion of the court.

In order to confine the controversy arising on this record to the propositions upon which its decision must really rest, to eliminate the questions discussed at bar, which are either irrelevant or so effectually foreclosed by prior decisions of this court as to be no longer open to controversy, the following propositions are stated:

Where a contract is claimed to arise from a state law and it is held below that a subsequent statute has repealed the

alleged contract and effect is thereby given to the subsequent law, the mere question whether the alleged contract has been repealed by the subsequent law is a state and not a Federal question. In such a case this court concerns itself not with the question whether the state law, from which the contract is asserted to have arisen, has been repealed, but proceeds to determine whether the repeal was void because it produced an impairment of the obligations of the contract within the purview of the Constitution of the United States. In other words, where the state court has given effect to a subsequent law, this court decides whether such effect, so given by the state court, violates the Constitution of the United States. *Gulf & Ship Island Railway Company* v. *Hewes*, 183 U. S. 66. We therefore put out of view the question whether the acts of 1854 or of 1880 were repealed by the subsequent state statutes, as held by the court below, and treating such repeal as an accomplished fact, shall determine whether the repealing acts were void because impairing the obligations of the contract relied upon, in violation of the Constitution of the United States. In considering this question it will be borne in mind that it is elementary that where the constitution of a State reserves the right to repeal, alter or amend, all charters granted by the legislature are subject to such provision, and therefore are wanting in that attribute of irrevocability which is essential to bring them within the intendment of the clause of the Constitution of the United States protecting contracts from impairment. The cases supporting this doctrine are so numerous that they need not be cited. We content ourselves, therefore, by referring to one of them: *Citizens' Savings Bank* v. *Owensboro*, 173 U. S. 636, 641. It is, moreover, conclusively determined that where the constitution of a State reserves the power to repeal, alter or amend a charter, such provision is applicable to the charter of a consolidated corporation where as the result of the consolidation a new corporation takes being, new stock is provided for, new franchises are conferred and new officers appointed. In other words, that where a legislature is inhibited by the constitution from making an irrepealable charter it cannot create a new contract and bring into being a new corporation, and yet

by the charter of such corporation give rise to the irrepealable contract which the constitution absolutely prohibits. To state the doctrine in another form, it is this: That where a new corporation is chartered, subject to a constitution which forbids the granting of an irrepealable right, such new corporation cannot become endowed by the effect of a legislative contract with an irrepealable right forbidden by the constitution. If one of the constituent elements of the corporation possessed, prior to the formation of the new corporation, such right, and under the assumption that the right itself passed to the new body, it loses its irrepealable character, because the new corporation is subject by the very law of its being to the provision of the constitution forbidding irrepealable grants.

The doctrine as just stated has been so frequently declared by this court that it is no longer open to discussion. The whole subject has been so recently fully reviewed and restated it is sufficient to refer to that case: *Yazoo & Mississippi Valley Railway Company* v. *Adams*, 180 U. S. 1, 17 *et seq.*, and authorities there cited.

Coming to apply the principles just stated to the case before us, it is apparent that unless there is something peculiar in this case which takes it from under the control of the doctrine referred to, that the court below correctly held that the new corporation created by the act of 1854 had no irrepealable contract exempting it from taxation either as the result of the act of 1854 or of the act of 1880. The positive prohibition existing in the constitution of the State against irrepealable charter grants both when the act of 1854 and the act of 1880 were passed, renders any other conclusion impossible. But it is insisted that as the constitution of 1867, which was in force when the law of 1880 was enacted, reserved the right to repeal, alter or amend only charters granted or adopted, the act of 1880 did not come within the right to repeal or amend because it was not a charter, but a contract entered into between the State and the corporation. True, the act of 1880 was put, not in the form of a charter amendment, but in that of a contract. The lower court, after quoting from the opinion rendered by it, when the case was before it under the act of 1854 (44 Maryland) said:

" It is to be observed that the court did not rest the inability of the legislature to grant to the corporation an irrepealable exemption from taxation upon the form or character of the particular statute then under consideration, but puts it upon the broad ground of the want of power in the legislature under the constitution to make such a grant at all. The court certainly in effect determines that any form of law which grants to a corporation such a corporate privilege as immunity from taxation is one passed pursuant to the section of the constitution referred to, and is therefore subject to alteration or repeal by future legislatures."

Without pausing to consider whether, as contended, the rule as thus announced may have been in some respects too broadly stated, we think it clear that the mere form adopted by a legislature in conferring a right on a corporation cannot be controlling, for if it were so the provision of the constitution, instead of being commanding and prohibitive would merely be precatory or advisory. We are also clearly of the opinion that the act of 1880, in its essential nature and effect in whatever form couched, was intended to be and necessarily operated as an amendment to the charter of the company created by the act of 1854. Such being its essential nature and necessary effect, we think it plainly came within the provisions of the constitution of 1867, and was therefore subject to repeal, alteration or amendment.

It is strenuously however insisted that this case should not be controlled by the reasons previously stated because of the following considerations: The decision of the Court of Appeals of Maryland under the act of 1854 (44 Maryland 131), it is urged, was not unanimous. There was an elaborate dissent. For this reason and because the case was open to review in this court on the question of the impairment of the obligations of the contract, it is said there was necessarily grave doubt as to the rights of the parties. In view of the foregoing conditions and of such doubt, the act of 1880 embodied but an honest effort by way of contract and compromise to close the doubtful controversy in the interest of both parties, the State on the one hand and the corporation on the other, hence the act of 1880 was

not subject to repeal, alteration or amendment. Conceding, *arguendo*, the premise upon which the above deduction is based, the conclusion itself is devoid of foundation. It but reiterates in another mode of statement the argument that the form in which a contract is couched, and not its substance and necessary effect, is the criterion by which to ascertain whether it is controlled by the constitutional provision forbidding irrepealable contracts. Moreover it disregards the elementary principle that the power to grant an irrepealable right by a compromise agreement depended on the existence of the authority to make such grant by original action. The power to compromise on the subject was as limited as the power to contract originally. *District of Columbia* v. *Bailey* (1897), 171 U. S. 161. Indeed, the entire argument upon this branch of the case, reiterated in many forms, amounts but to the contention, when ultimately considered, that because the act of 1880 is asserted to have been enacted with the view of settling what was honestly deemed to be a pending and serious controversy, it was unwise, and it may be unjust to repeal it. Pretermitting the infirmity in the proposition which naturally is suggested by the fact that shortly after the decision in 44 Maryland this court decided that the possession of the rights and privileges of a former corporation did not endow a new corporation with an exemption from taxation enjoyed by the old, *Morgan* v. *Louisiana* (1876), 93 U. S. 217, and putting out of view the other cases to the same effect, decided by this court prior to 1880, the proposition is untenable. It but invokes reasons of expediency or policy. Into these considerations we may not enter; we are concerned alone with the question of power, and on passing on such question cannot hold that an act which by the very terms of the state constitution was made repealable, nevertheless engendered an irrepealable contract protected from impairment by the Constitution of the United States.

*Affirmed.*