# COMMISSIONERS OF WICOMICO COUNTY v. BANCROFT.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 129. Argued October 9, 1906.—Decided November 5, 1906.

In the absence of a contract protected by the impairment clause of the Federal Constitution, whether a statutory exemption has been repealed by a subsequent statute is a question of state law in which the decisions of the highest court of the State are binding.

It is only where an irrepealable contract exists that it is the duty of this court to decide for itself irrespective of the decisions of the state court whether a subsequent act impairs the obligation of such contract.

Even though Federal courts might exercise independent judgment, in this case the decisions of the Supreme Court of Maryland are followed to the effect that an act directing a new assessment of property in the State and expressly declaring that property of every railroad in the State be valued and assessed, amounted to a repeal of prior exemptions from taxation where there was no irrepealable contract.

A proviso in a state statute taxing all property of railroads that no irrepealable contract of exemption shall be affected construed as expressing the legislative intent to repeal all exemptions not protected by binding contracts beyond legislative control.

135 Fed. Rep. 977, reversed.

THE facts are stated in the opinion.

*Mr. James E. Ellegood,* for petitioners:

The question has become *res adjudicata* by the courts of Maryland and by this court. The contract must have been impaired by some act of the legislative power of the State and not by the courts. *Lehigh Water Co.* v. *Easton,* 121 U. S. 388; *Central Land Co.* v. *Laidley,* 159 U. S. 103.

The doctrine of *stare decisis* and *res adjudicata* rests on a broader ground than technical estoppel. It has been called "a rule of rest," and is founded on public policy.

The decisions in the Maryland and Federal courts certainly make the "law of the case," and settle the rights of the county commissioners and the duty of the railroad company, which

became the thing adjudged. *New Orleans* v. *Citizens Bank,* 167 U. S. 398; *Covington* v. *First National Bank,* 198 U. S. 100. This is a clear attempt by a collateral proceeding to bring the Federal court into direct conflict with the state court, and presents the example of one court indirectly interfering with the decision of a court of concurrent jurisdiction and annulling its effect as between the parties. 11 Am. & Eng. Ency. Law, 2d ed., 398; *Crowley* v. *Davis;* 37 California, 269.

For the distinction between *res adjudicata* and *stare decisis,* see 24 Am. & Eng. Ency. Law, 2d ed., 715.

The evils of such a conflict are shown in *Phelps* v. *Mutual Reserve Life Assn.,* 50 C. C. A. 339, affirmed in 190 U. S. 147. See also *Dawson* v. *Columbia Ave. Trust Co.,* 197 U. S. 178.

While the Federal courts are not controlled by the decisions of the state courts in matters of general principles of the law, they deem themselves uniformly bound to follow them when construing their own statutes; and the jurisdiction of the Federal court must rest on other grounds than the mere unconstitutionality of the taxes involved. *Sheldon* v. *Platt,* 139 U. S. 591, 599, reviewing the cases where injunctions were granted, and affirming *Dows* v. *Chicago,* 11 Wall. 108.

But independent of the decisions of the Maryland courts, there was no contract of exemption. An exemption from taxation is not a vested right, a property right, or a positive right. *People* v. *Supervisors,* 67 N. Y. 116; *Pearsall* v. *Great Northern R. R. Co.,* 161 U. S. 662.

The alleged exemption was not a part of the original charter of this corporation, and the grant is a mere gratuity. *Appeal Tax Court* v. *Grand Lodge,* 50 Maryland, 428; *Rector* v. *Philadelphia,* 24 How. 306; *Grand Lodge* v. *New Orleans,* 166 U. S. 148; *People* v. *Commissioners,* 47 N. Y. 504.

*Mr. Nicholas P. Bond, Mr. Ralph Robinson* and *Mr. Edward Duffy,* for respondent, submitted:

The Federal court is not bound to follow the decisions of the Court of Appeals of Maryland in construing the Mary-

land statutes. *Mercantile Trust and Deposit Co. v. Texas and Pacific Ry.,* 51 Fed. Rep. 536. While a state statute construed, or a rule of property established at the time a transaction is entered into, or rights accrued, such construction will bind the parties as fully as though written into the transaction; where no such construction was then in force, the statute should be construed by the independent judgment of this court. *Burgess v. Seligman,* 107 U. S. 20; *Carroll Co. v. Smith,* 111 U. S. 556; *Anderson v. Santa Anna,* 116 U. S. 356.

The language in section 188 of the Code of Maryland is not only broad enough to transfer the exemption from taxation secured to the original railroad by section 2 of the acts of 1886, but this is the very language which has been held apt and technical for this purpose by a line of decisions in both the Federal and state courts. *Trask v. Maguire,* 18 Wall. 391; *L. & N. R. R. Co. v. Palmes,* 109 U. S. 251; *Phœnix Insurance Company v. Tennessee,* 161 U. S. 174; *State Board of Assessors v. Morris and Essex R. R. Co.,* 49 N. J. L. 193; *State v. Railroad,* 80 Tennessee, 583; *Memphis v. Phœnix Insurance Company,* 91 Tennessee, 566.

MR. JUSTICE DAY delivered the opinion of the court.

The respondent, Samuel Bancroft, Jr., began an action in the Circuit Court of the United States for the District of Maryland to enjoin the county commissioners of Wicomico County from levying taxes on the property of the Baltimore, Chesapeake and Atlantic Railway Company, alleging that he was the holder of twenty bonds secured by mortgage upon the company's property, which, under the laws of the State, had been exempted from taxation. Such proceedings were had that a decree was entered enjoining taxation of certain property of the railway company. Upon appeal to the Circuit Court of Appeals, the judgment was affirmed, 135 Fed. Rep. 977, and the case was brought here by writ of certiorari.

The case was tried upon an agreed statement of facts, from which the following, pertinent to the determination of the case, may be extracted: The Baltimore and Eastern Shore Railroad Company, organized to build a line of road from Eastern Bay, in Talbot County, to Salisbury, Wicomico County, in the same State, by act of the legislature of Maryland, was granted certain privileges (chapter 133, Acts of the Assembly, 1886), sections 2, 4 and 5 being as follows:

"SEC. 2. *And be it enacted,* That said corporation shall have perpetual existence, and its franchises, property, shares of capital stocks and bonds shall be exempt from all state, county or municipal taxation for the term of thirty years, counting from the date of the completion of said road between the *termini* mentioned in its charter."

"SEC. 4. *And be it enacted,* That the said Baltimore and Eastern Shore Railroad Company aforesaid, shall have power to unite, connect and consolidate with any railroad company or companies, either in or out of this State, so that the capital stock of said companies so united, connected and consolidated (respectively), may, at the pleasure of the directors, constitute a common stock, and the respective companies may thereafter constitute one company and be entitled to all the property, franchises, rights, privileges and immunities which each of them possess, have and enjoy under and by virtue of their respective charters.

"SEC. 5. *And be it enacted,* That the Baltimore and Eastern Shore Railroad Company shall have power to lease or purchase and operate any railroad or railroads either in or out of this State, for the purpose of carrying on their business, and any other railroad company in this State shall have the right to lease or sell its railroad or other property to the said Baltimore and Eastern Shore Railroad Company."

The Baltimore and Eastern Shore Railroad Company accepted the provisions of the act and completed the construction of its road between the *termini* named in August, 1891. In June, 1890, it purchased the property of the

Wicomico and Pocomoke Railroad Company, extending from Salisbury· to· Ocean City. Afterwards, the Baltimore and Eastern Shore Railroad Company mortgaged the entire property to secure $1,600,000 of mortgage bonds. This mortgage was foreclosed in 1894, and the purchaser proceeded to organize a new corporation, the Baltimore, Chesapeake and Atlantic Railway Company, the respondent becoming the holder of some of its mortgage bonds. This reorganization was under sections 187 and 188 of art. 23, Maryland Code of· 1888, which provide as follows:

"SEC. 187, that in case of the sale of any railroad under foreclosure of mortgage, the purchaser may form a corporation for the purpose of owning, possessing, maintaining and operating such railroad, by filing in the office of the Secretary of State a certificate of the name and style of such corporation,. the number of directors," etc.

"SEC. 188. Such corporation shall possess all the powers, rights, immunities, privileges and franchises in respect to such railroad, or the part thereof included in such certificate, and in respect to the real and personal property appertaining to the same, which were possessed and enjoyed by the corporation which owned or held such railroad previous to such sale under or by virtue of its charter, and any amendments thereto, and of any other laws of this State,". etc.

Under authority of the Maryland statutes the Baltimore, Chesapeake· and Atlantic Railway Company issued the mortgage bonds of which respondent is the holder. The county commissioners of Wicomico. County have levied and assessed taxes upon the railroad company's property, and threatened to sell the same for non-payment thereof. · The Circuit Court held, and the Circuit Court of Appeals affirmed the judgment, that sections 187 and .188 of the Maryland Code extending immunities to the new company, had the effect to exempt from taxation certain property of the reorganized company and that the exemption constituted a contract between the State and the company entitled to protection under the con-

tract clause of the Federal Constitution, against the subsequent attempt of the county commissioners to levy taxes upon the property.

Notwithstanding this decision of the Circuit Court of Appeals, it is now conceded in the brief of the respondent's counsel, so far as this argument is concerned, that there was no binding contract upon the State entitled to protection under the Federal Constitution (Article I, Section 10), against state impairment of the obligation of the contract. In view of the provisions of the Maryland constitution this concession would seem in harmony with the right reserved in that instrument to amend, repeal and alter charters. *Northern Central Railway Co.* v. *Maryland,* 187 U. S. 258. And see *Wisconsin & Michigan Railway Co.* v. *Powers,* 191 U. S. 379. But it is insisted, conceding that the exemption from taxation was merely a bounty or gratuity, it extended to the reorganized company by force of the Maryland statutes above quoted, and has never been repealed nor withdrawn by the State, and, therefore, the bondholder, being directly interested in the property, has a right to be protected by injunction against the levying of such taxes so long as the act remains in force.

The questions arising in this case, as to the construction and force of the acts of the legislature of the State, have been before the Supreme Court of Maryland in three cases: *Baltimore, Chesapeake & Atlantic Railway Co.* v. *Ocean City,* 89 Maryland, 89; *Baltimore, Chesapeake & Atlantic Railway Co.* v. *County Commissioners of Wicomico County,* 93 Maryland, 113; and *Baltimore, Chesapeake & Atlantic Railway Co.* v. *Wicomico County Commissioners,* 63 Atl. Rep. 678. In these cases it was held that the exemption from taxation provided for by the laws above quoted did not extend to the reorganized company, and in the last case, decided March 27, 1906, since the decision in the Circuit Court of Appeals, it was held that the general assessment law of 1896 (Acts of 1896, Chap. 120), declaring that the property of every railroad should be assessed for county and municipal purposes, and providing that noth-

ing in the act should discharge or release any irrepealable contract or obligation existing at the date of the passage of the act, amounted to a recall of the immunity granted by the former law which had at all times been subject to repeal by the State, and that, conceding the immunity extended to the reorganized company under section 187, of the statute, the repeal of the exemption did not violate any contract with the State, entitled to the protection of the Federal Constitution.

As we have said, the argument addressed to this court is rested upon the proposition that the subsequent law of 1896, imposing taxes upon the property of the railroad company in general terms, did not repeal prior legislation, which, properly construed, gives the privilege of exemption from taxation to the property of the reorganized railroad company. We, therefore, are to consider a case wherein there is no contention that a valid and binding contract has been impaired by state action, and the questions are as to the proper construction of the statute, and whether a repealable exemption from taxation has been withdrawn by subsequent legislation of the State.

Previous decisions of this court have settled the proposition that whether such exemption has been in fact repealed by a subsequent state statute is a question of state law in which the decisions of the highest courts of the State, in the absence of a contract, are binding; and that it is only where the exemption is irrepealable, thus constituting a contract, that it becomes the duty of this court to decide for itself whether the subsequent act did or did not impair the obligation of the contract. *Gulf & Ship Island R. R. Co.* v. *Hewes,* 183 U. S. 66, 74; *Northern Central Railway Co.* v. *Maryland,* 187 U. S. 258, 266, 267. It is contended, however, that inasmuch as the respondent acquired his bonds in 1896, which were issued in 1894, at a time when none of the Maryland decisions above referred to had been made, the first of them being in 1899, the construction of the statutes and their continued force are questions for the Federal courts having jurisdiction of the cause and the parties. And further, that while

the Federal tribunals will differ reluctantly from the state courts upon a question of the validity of state statutes, and will "lean towards an agreement of views with the state courts," nevertheless they must in such cases exercise an independent judgment in determining the force and validity of state statutes. *Burgess* v. *Seligman*, 107 U. S. 20, 23; *Great Southern Hotel Co.* v. *Jones*, 193 U. S. 532, and cases cited in the opinion in that case.

If we could concede the soundness of this contention, we are of opinion that the Court of Appeals of Maryland was right in holding that the legislation of 1896 (Acts of 1896, Chap, 120), directing a new assessment of the property of the State and expressly declaring that the property of every railroad in the State should be valued and assessed for county and municipal purposes, had the effect to withdraw the prior exemption from taxation if a proper construction of the legislation of the State would extend it to the property of the reorganized company. The act contains the significant proviso that nothing therein contained shall be held to discharge, release, impair or affect any irrepealable contract or obligation of any kind whatsoever existing at the date of the passage of the act. This proviso evidences the legislative intent to repeal exemptions from taxation which were not protected by binding contracts beyond legislative control, if any such existed, and to bring all property within the taxing power of the State. We agree with the reasoning expressed by the Court of Appeals of Maryland upon this branch of the case. 63 Atl. Rep. 683.

From this view it follows that the decree of the Circuit Court of Appeals must be

*Reversed and the cause remanded to the Circuit Court with directions to dismiss the bill.*