## KUHN *v.* FAIRMONT COAL COMPANY.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 50.   Argued December 3, 6, 1909.—Decided January 3, 1910.

When administering state laws and determining rights accruing thereunder, the jurisdiction of the Federal court is an independent one, coördinate and concurrent with, and not subordinate to, the jurisdiction of the state courts.

Rules of law relating to real estate, so established by state decisions rendered before the rights of the parties accrued, as to have become rules of property and action, are accepted by the Federal court; but where the law has not thus been settled it is the right and duty of the Federal court to exercise its own judgment, as it always does in cases depending on doctrines of commercial law and general jurisprudence.

Even in questions in which the Federal court exercises its own judgment, the Federal court should, for the sake of comity and to avoid confusion, lean to agreement with the state court if the question is balanced with doubt.

When determining the effect of conveyances or written instruments between private parties, citizens of different States, it is the right and duty of the Federal court to exercise its own independent judgment where no authoritative state decision had been rendered by the state court before the rights of the parties had accrued and become final.

The Federal court is not bound by a decision of the state court, rendered after the deed involved in the case in the Federal court was made and after the injury was sustained, holding that there is no implied reservation in a deed conveying subsurface coal and the right to mine it to leave enough coal to support the surface in its original position.

THE facts are stated in the opinion.

*Mr. Homer W. Williams* for Kuhn:

The Griffin case decided by the state court does not construe any statute and cannot be placed in the class of cases decided

by the state courts which control Federal courts. Nor does it establish any rule of property. This is an action of trespass on the case for tort. None of the cases cited by defendant apply.

Decisions of the state court even when decided upon a statute or upon the principle of an established rule of property, do not preclude the Federal court from passing on questions of contract out of which the cause of action accrued before the decision of the state court. *Swift* v. *Tyson*, 16 Pet. 1; *Griffin* v. *Overman Wheel Co.*, 9 C. C. A. 584; *Rowan* v. *Runnels*, 10 How. 134; *Lawrence* v. *Wickware*, Fed. Cas. No. 8,148; *S. C.*, 4 McLean, 56; *Pease* v. *Peck*, 18 How. 599; *Roberts* v. *Bolles*, 101 U. S. 119; *Burgess* v. *Seligman*, 107 U. S. 20; *Detroit* v. *Railroad Co.*, 55 Fed. Rep. 569; *King* v. *Investment Co.*, 28 Fed. Rep. 33; *Groves* v. *Slaughter*, 15 Pet. 497; *Sims* v. *Hunsley*, 6 How. 1.

The Federal courts are not bound in cases involving validity of municipal bonds by decisions of state courts made after the bonds are issued. *Enfield* v. *Jordan*, 119 U. S. 680; *Bolles* v. *Brimfield*, 120 U. S. 759; *Barnum* v. *Okolona*, 148 U. S. 393; *Gibson* v. *Lyon*, 115 U. S. 439.

The Federal courts are not bound by decisions of the state court where private rights are to be determined by application of common-law rules alone, *Chicago* v. *Robbins*, 2 Black, 418; *Hill* v. *Hite*, 29 C. C. A. 55; or contract rights depending on a state statute or provision of the Constitution if the decision of state court is made after the contract. *Central Trust Co.* v. *Street Railway Co.*, 82 Fed. Rep. 1; *Trust Co.* v. *Cincinnati*. 76 Fed. Rep. 296; *Jones* v. *Hotel Co.*, 79 Fed. Rep. 447.

As to provisions in a deed that are merely contractual and do not affect the title the Federal courts are not bound by state court decisions. *Fire Ins. Co.* v. *Railway Co.*, 62 Fed. Rep. 904; *Bartholomew* v. *City of Austin*, 85 Fed. Rep. 359; *Jones* v. *Hotel Co.*, 86 Fed. Rep. 370; and see also *Speer* v. *Commissioners*, 88 Fed. Rep. 749; *Clapp* v. *Otoe County*, 104 Fed. Rep. 473.

Nor should the decision of the state court be followed to such an extent as to sacrifice truth, justice or law. *Faulkner* v. *Hart*, 82 N. Y. 416; *Lane* v. *Vick*, 3 How. 462; *Foxcraft* v. *Mallett*, 4 How. 353; *Loan Co.* v. *Harris*, 113 Fed. Rep. 36.

*Mr. Z. Taylor Vinson* and *Mr. Edward A. Brannon* for Fairmont Coal Company:

It is the duty of the Federal courts to follow the decisions of the highest court of a State in cases pending in the former where the decision of the state court construes a state statute or local law or interprets deeds or grants to real estate and determines rights pertaining thereto, wherein no Federal question is involved; nor is this duty affected by the fact that the decision is made by the state court after the contract rights involved in the case in the Federal court had accrued. *Hartford Ins. Co.* v. *Chicago &c. Ry. Co.*, 175 U. S. 91, 108; *Rowan* v. *Runnels*, 5 How. 134, 139; *Morgan.* v. *Curtenius*, 20 How. 1; *Fairfield* v. *Gallatin County*, 100 U. S. 47, 52; *Burgess* v. *Seligman*, 107 U. S. 20, 35; *Bauserman* v. *Blunt*, 147 U. S. 647, 653; *Williams* v. *Eggleston*, 170 U. S. 304, 311; *Sioux City R. R.* v. *Trust Co. of N. A.*, 173 U. S. 99.

In determining what are the laws of the several States, we are bound to look not only at their constitutions and statutes but also at the decisions of their highest courts. *Wade* v. *Travis County*, 174 U. S. 499; *Polk's Lessee* v. *Wendal*, 9 Cranch, 87; *Luther* v. *Borden*, 7 How. 1; *Nesmith* v. *Sheldon*, 7 How. 812; *Jefferson Bank* v. *Skelly*, 1 Black, 436; *Leffingwell* v. *Warren*, 2 Black, 599; *Christy* v. *Pridgeon*, 4 Wall. 196; *Post* v. *Supervisors*, 105 U. S. 667; *Bucher* v. *Cheshire R. R. Co.*, 125 U. S. 555; *Jackson* v. *Chew*, 6 Pet. 648; *Russell* v. *Southard*, 12 How. 139.

The construction of deeds for the transfer of land between private parties, given by the highest court of the State in which the land lies, will be adopted and followed by the Federal courts whenever the same question is presented to them. *East Central Eureka Co.* v. *Central Eureka Co.*, 204 U. S. 266,

272; citing *Brine v. Hartford Ins. Co.*, 96 U. S. 627, 636; *De-Vaughn* v. *Hutchinson*, 165 U. S. 566; and see also *United States* v. *Crosby*, 7 Cranch, 115; *Clark* v. *Graham*, 6 Wheat. 577; *McGoon* v. *Scales*, 9 Wall. 23; *Olcott* v. *Bynum*, 17 Wall. 44; *Ex parte McNeil*, 13 Wall. 236; *Clark* v. *Clark*, 178 U. S. 186; *Oliver* v. *Clarke*, 106 Fed. Rep. 402; *Berry* v. *Bank*, 93 Fed. Rep. 44.

The Federal courts will lean toward an agreement of views with the state courts if the question seems balanced with doubt. *Waterworks* v. *Tampa*, 199 U. S. 244; *Mead* v. *Portland*, 200 U. S. 163; *Burgess* v. *Seligman*, 107 U. S. 20; *Wilson* v. *Standefer*, 184 U. S. 399, 412; *Bienville Water Co.* v. *Mobile*, 186 U. S. 212, 220; *Chicago Seminary* v. *Illinois*, 188 U. S. 622, 674.

The construction given by the state court to the similar deeds in the Griffin case, announced no new rules of interpretation of deeds; but, on the contrary, followed strictly a line of decisions of the state courts of West Virginia and Virginia made long prior to the date of the deed involved in this case. No rule of law previously established has been changed but the decision is in perfect accord with the English decisions. McSwinney on Mines, see 59 W. Va. 507; *Hurst* v. *Hurst*, 7 W. Va. 339; *Snodgrass* v. *Wolf*, 11 W. Va. 158; *Barber* v. *F. & M. Ins. Co.*, 16 W. Va. 658; *O'Brien* v. *Brice*, 21 W. Va. 704; *Gibney* v. *Fitzsimmons*, 45 W. Va. 334; *Long* v. *Perrine*, 41 W. Va. 158; *McDougall* v. *Musgrave*, 46 W. Va. 509; 2 Minor's Inst. pp. 996, 1066; *Carrington* v. *Goddin*, 13 Gratt. 587; *Wilson* v. *Langhorne*, 102 Virginia, 631; *King* v. *Norfolk & Western*, 99 Virginia, 625.

The court will not write new covenants into a deed. See *Gavinzel* v. *Crump*, 22 Wall. 308; *Baltzer* v. *Air Line Co.*, 115 U. S. 634; *D. & H. Canal Co.* v. *Penna. Coal Co.*, 8 Wall. 276, 290. The laws of the State in which land is situated control exclusively its descent, alienation and transfer, and the effect and construction of instruments intended to convey it. Cases *supra* and *Abraham* v. *Casey*, 179 U. S. 210; *Claiborne Co.* v.

*Brooks,* 111 U. S. 400; *Williams* v. *Kutland,* 13 Wall. 306; *Arndt* v. *Griggs,* 134 U. S. 316; *Suydam* v. *Williamson,* 24 How. 427; *Chicago* v. *Robbins,* 2 Black, 418; *Green* v. *Neal,* 6 Pet. 291, 296.

The rules of property covered by this principle include those governing transfer, descent, title and possession. *Warburton* v. *White,* 176 U. S. 484; 11 Cyc. 903; *Buford* v. *Kerr,* 90 Fed. Rep. 513; *Foster* v. *Oil & Gas Co.,* 90 Fed. Rep. 178.

This court has at times overruled its own decisions so as to conform to the decisions of the state court, affecting titles to real estate. *Roberts* v. *Lewis,* 153 U. S. 367; *Lowndes* v. *Huntington,* 153 U. S. 1; *Moores* v. *Bank,* 104 U. S. 625; *Forsythe* v. *Hammond,* 166 U. S. 518; *Board* v. *Coler,* 180 U. S. 506.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case is here on a question propounded under the authority of the Judiciary Act of March 3, 1891, relating to the jurisdiction of the courts of the United States. 26 Stat. 826, c. 517, § 6. The facts out of which the question arises are substantially as will be now stated.

On the twenty-first day of November, 1889, the plaintiff Kuhn, a citizen of Ohio, sold and conveyed to Camden all the coal underlying a certain tract of land in West Virginia of which he, Kuhn, was the owner in fee. The deed contained these clauses: "The parties of the first part do grant unto the said Johnson N. Camden all the coal and mining privileges necessary and convenient for the removal of the same, in, upon and under a certain tract or parcel of land situated in the county of Marion, on the waters of the West Fork River, bounded and described as follows, to wit: . . . Together with the right to enter upon and under said land and to mine, excavate and remove all of said coal, and to remove upon and under the said lands the coal from and under adjacent, coterminous and neighboring lands, and also the right to enter upon and under the tract of land hereinbefore described

and make all necessary structures, roads, ways, excavations, airshafts, drains, drainways and openings necessary or convenient for the mining and removal of said coal and the coal from coterminous and neighboring lands to market."

The present action of trespass on the case was brought January 18th, 1906. The declaration alleged that the coal covered by the above deed passed to the defendant, the Fairmont Coal Company, a West Virginia corporation, on the —— of January, 1906; that the plaintiff Kuhn was entitled of right to have all his surface and other strata overlying the coal supported in its natural state either by pillars or blocks of coal or by artificial support; that on the day named the defendant company mined and removed coal from under the land, leaving, however, large blocks or pillars of coal as a means of supporting the overlying surface; that the coal company, disregarding the plaintiff's rights, did knowingly, willfully and negligently, without making any compensation therefor, or for the damages arising therefrom, mine and remove all of said blocks and pillars of coal so left, by reason whereof and because of the failure to provide any proper or sufficient artificial or other support for the overlying surface, the plaintiff's surface land, or a large portion thereof, was caused to fall; and that it was cracked, broken and rent, causing large holes and fissures to appear upon the surface and destroying the water and water courses.

The contract under which the title to the coal originally passed was executed in West Virginia and the plaintiff's cause of action arose in that State.

A demurrer to the declaration was sustained by the Circuit Court, an elaborate opinion being delivered by Judge Dayton, *Kuhn* v. *Fairmont Coal Co.*, 152 Fed. Rep. 1013. The case was then taken upon writ of error to the Circuit Court of Appeals.

It appears from the statement of the case made by the Circuit Court of Appeals that in the year 1902, after Kuhn's deed to Camden, one Griffin brought, in a court of West

Virginia, an action, similar in all respects to the present one, against the Fairmont Coal Company, the successor of Camden. His rights arose from a deed almost identical with that executed by Kuhn to Camden. That case was ruled in favor of the Coal Company, and, subsequently, was taken to the Supreme Court of West Virginia, which announced its opinion therein in November, 1905. A petition for rehearing having been filed, the judgment was stayed. But the petition was overruled March 27, 1906, on which day, after Kuhn's suit was brought, the decision previously announced in the Griffin case became final under the rules of the Supreme Court of the State. *Griffin* v. *Coal Co.,* 59 W. Va. 480.

The contention by the Coal Company in the court below was that as the decision in the Griffin case covered, substantially, the same question as the one here involved, it was the duty of the Federal court to accept that decision as controlling the rights of the present parties, whatever might be its own opinion as to the law applicable to this case. The contention of Kuhn was that the Federal court was under a duty to determine the rights of the present parties upon its own independent judgment, giving to the decision in the state court only such weight as should be accorded to it according to the established principles in the law of contracts and of sound reasoning; also, that the Federal court was not bound by a decision of the state court in an action of trespass on the case for a tort not involving the title to land.

Such being the issue, the Circuit Court of Appeals, proceeding under the Judiciary Act of March 3d, 1891, c. 517, have sent up the following question to be answered:

"Is this court bound by the decision of the Supreme Court in the case of *Griffin* v. *Fairmont Coal Company,* that being an action by the plaintiff against the defendant for damages for a tort, and this being an action for damages for a tort based on facts and circumstances almost identical, the language of the deeds with reference to the granting clause being

in fact identical, that case having been decided *after* the contract upon which defendant relies was executed, *after* the injury complained of was sustained, and *after* this action was instituted?"

There is no room for doubt as to the scope of the decision in the Griffin case. The syllabus—(p. 480) which in West Virginia is the law of the case, whatever may be the reasoning employed in the opinion of the court—is as follows: "1. Deeds conveying coal with rights of removal should be construed in the same way as other written instruments, and the intention of the parties as manifest by the language used in the deed itself should govern. 2. The vendor of land may sell and convey his coal and grant to the vendee the right to enter upon and under said land and to mine, excavate and remove all of the coal purchased and paid for by him, and if the removal of the coal necessarily causes the surface to subside or break, the grantor cannot be heard to complain thereof. 3. Where a deed conveys the coal under a tract of land, together with the right to enter upon and under said land, and to mine, excavate and remove all of it, there is no implied reservation in such an instrument that the grantee must leave enough coal to support the surface in its original position. 4. It is the duty of the court to construe contracts as they are made by the parties thereto, and to give full force and effect to the language used, when it is clear, plain, simple and unambiguous. 5. It is only where the language of a contract is ambiguous and uncertain and susceptible of more than one construction that a court may, under the well-established rules of construction, interfere to reach a proper construction and make certain that which in itself is uncertain."

Nor can it be doubted that the point decided in the Griffin case had not been previously adjudged by the Supreme Court of that State. Counsel for the Coal Company expressly state that the question here involved was never before the legislature or courts of West Virginia until the deed involved in the

Griffin case came before the Supreme Court of that State for construction; that "until then there was no law and no local custom upon the subject in force in West Virginia;" and that "only after the holding of the state court in the Griffin case could it be said that the narrow question therein decided had become a rule of property in that State." .

In this view of the case was not the Federal court bound to determine the dispute between the parties according to its own independent judgment as to what rights were acquired by them under the contract relating to the coal? If the Federal court was of opinion that the Coal Company was under a legal obligation while taking out the coal in question to use such precautions and to proceed in such way as not to destroy or materially injure the surface land, was it bound to adjudge the contrary simply because, in a *single* case, *to which Kuhn was not a party* and which was determined *after* the right of the present parties had accrued and become fixed under their contract, and *after* the injury complained of had occurred, the state court took a different view of the law? If, when the jurisdiction of the Federal court was invoked, Kuhn, the citizen of Ohio had, in its judgment a valid cause of action against the Coal Company for the injury of which he complained, was that court obliged to subordinate its view of the law to that expressed by the state court?

In cases too numerous to be here cited the general subject suggested by these questions has been considered by this court. It will be both unnecessary and impracticable to enter upon an extended review of those cases. They are familiar to the profession. But in the course of this opinion we will refer to a few of them.

The question as to the binding force of state decisions received very full consideration in *Burgess* v. *Seligman*, 107 U. S. 20, 33. After judgment in that case by the United States Circuit Court, the Supreme Court of the State rendered two judgments, each of which was adverse to the grounds upon which the Circuit Court had proceeded, and the con-

tention was that this court should follow those decisions of
the state court and reverse the judgment of the Circuit Court.
The opinion in that case states that in order to avoid mis-
apprehension the court had given the subject special con-
sideration, and the extended note at the close of that opinion
shows that the prior cases were all closely scrutinized by the
eminent Justice who wrote the opinion. A conclusion was
reached that received the approval of all the members of the
court. We place in the margin [1] an extract from the opinion

[1] "We do not consider ourselves bound to follow the decision of
the state court in this case. When the transactions in controversy
occurred, and when the case was under the consideration of the Cir-
cuit Court, no construction of the statute had been given by the state
tribunals contrary to that given by the Circuit Court. The Federal
courts have an independent jurisdiction in the administration of
state laws, coördinate with, and not subordinate to, that of the state
courts, and are bound to exercise their own judgment as to the mean-
ing and effect of those laws. The existence of two coördinate juris-
dictions in the same territory is peculiar, and the results would be
anomalous and inconvenient but for the exercise of mutual respect
and deference. Since the ordinary administration of the law is carried
on by the state courts, it necessarily happens that by the course of
their decisions certain rules are established which become rules of
property and action in the State, and have all the effect of law, and
which it would be wrong to disturb. This is especially true with regard
to the law of real estate and the construction of state constitutions
and statutes. Such established rules are always regarded by the
Federal courts, no less than by the state courts themselves, as au-
thoritative declarations of what the law is. But where the law has
not been thus settled, it is the right and duty of the Federal courts to
exercise their own judgment; as they also always do in reference to
the doctrines of commercial law and general jurisprudence. So when
contracts and transactions have been entered into, and rights have
accrued thereon under a particular state of the decisions, *or when there
has been no decision, of the state tribunals*, the Federal courts properly
claim the right to adopt their own interpretation of the law applicable
to the case, although a different interpretation may be adopted by the
state courts after such rights have accrued. But even in such cases,
for the sake of harmony and to avoid confusion, the Federal courts
will lean towards an agreement of views with the state courts if the

of Mr. Justice Bradley. In *Bucher* v. *Cheshire Railroad Co.*, 125 U. S. 555, 584, Mr. Justice Miller, speaking for the court, observed (p. 584): "It may be said generally that wherever the decisions of the state courts relate to some law of a local character, which may have become established by those courts, or has always been a part of the law of the State, that the decisions upon the subject are usually conclusive, and always entitled to the highest respect of the Federal courts. The whole of this subject has recently been very ably reviewed in the case of *Burgess* v. *Seligman*, 107 U. S. 20. Where such local law or custom has been established by repeated decisions of the highest courts of a State it becomes also the law governing the courts of the United States sitting in that State." See also *Jackson* v. *Chew*, 12 Wheat. 153.

Up to the present time these principles have not been modified or disregarded by this court. On the contrary, they have been reaffirmed without substantial qualification in many subsequent cases, some of which are here cited. *East Alabama Ry. Co.* v. *Doe*, 114 U. S. 340; *Bucher* v. *Cheshire R. R. Co.*, 125 U. S. 555; *Gormley* v. *Clark*, 134 U. S. 338; *B. & O. R. R. Co.* v. *Baugh*, 149 U. S. 368; *Folsom* v. *Ninety-six*, 159 U. S. 611; *Barber* v. *Pittsburg &c. Ry.*, 166 U. S. 83; *Stanley County* v. *Coler*, 190 U. S. 437; *Julian* v. *Central Trust Co.*, 193 U. S. 93; *Comm'rs &c.* v. *Bancroft*, 203 U. S. 112; *Presidio County* v. *Noel-Young Bond Co.*, 212 U. S. 58.

---

question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the States in controversies between citizens of different States was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

We take it, then, that it is no longer to be questioned that the Federal courts in determining cases before them are to be guided by the following rules: 1. When administering state laws and determining rights accruing under those laws the jurisdiction of the Federal court is an independent one, not subordinate to but coördinate and concurrent with the jurisdiction of the state courts. 2. Where, *before the rights of the parties accrued,* certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the State, those rules are accepted by the Federal court as authoritative declarations of the law of the State. 3. *But where the law of the State has not been thus settled,* it is not only the right but the duty of the Federal court to exercise its own judgment, as it also always does when the case before it depends upon the doctrines of commercial law and general jurisprudence. 4. So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, *or when there has been no decision by the state court on the particular question involved,* then the Federal courts properly claim the right to give effect to their own judgment as to what is the law of the state applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued. But even in such cases, for the sake of comity and to avoid confusion, the Federal court should always lean to an agreement with the state court if the question is balanced with doubt.

The court took care, in *Burgess* v. *Seligman,* to say that the Federal court would not only fail in its duty, but would defeat the object for which the national courts were given jurisdiction of controversies between citizens of different States, if, while leaning to an agreement with the state court, it did not exercise an independent judgment in cases involving principles not settled by previous adjudications.

It would seem that according to those principles, now firmly established, the duty was upon the Federal court, in

the present case, to exercise its independent judgment as to what were the relative rights and obligations of the parties under their written contract. The question before it was as to the liability of the Coal Company for an injury arising from the failure of that corporation, while mining and taking out the coal, to furnish sufficient support to the overlying or surface land. Whether such a case involves a rule of property in any proper sense of those terms, or only a question of general law within the province of the Federal court to determine for itself, the fact exists that there had been no determination of the question by the state court before the rights of the parties accrued and became fixed under their contract, or before the injury complained of. In either case, the Federal court was bound under established doctrines to exercise its own independent judgment, with a leaning, however, as just suggested, for the sake of harmony, to an agreement with the state court, if the question of law involved was deemed to be doubtful. If, before the rights of the parties in this case were fixed by written contract, it had become a settled rule of law in West Virginia, as manifested by decisions of its highest court, that the grantee or his successors in such a deed as is here involved, was under no legal obligation to guard the surface land of the grantor against injury resulting from the mining and removal of the coal purchased, a wholly different question would have been presented.

There are adjudged cases involving the meaning of written contracts having more or less connection with land that were not regarded as involving a rule in the law of real estate, but as only presenting questions of general law touching which the Federal courts have always exercised their own judgment, and in respect to which they are not bound to accept the views of the state courts. Let us look at some of those cases. They may throw light upon the present discussion.

In *Chicago City* v. *Robbins*, 2 Black, 418, 428, which was

an action on the case for damages, the question was as to the right of the city of Chicago—which was under a duty to see that its streets were kept in safe condition for persons and property—to hold one Robbins liable in damages for so using his lot on a public street as to cause injury to a passer-by. The city was held liable to the latter and sued Robbins on that account. The state court, in a similar case, decided for the defendant, and it was contended that the Federal court should accept the views of the local court as to the legal rights of the parties. But this court, speaking by Mr. Justice Davis, said: "Where rules of property in a State are fully settled by a series of adjudications, this court adopts the decisions of the state courts. But where private rights are to be determined by the application of common-law rules alone, this court, although entertaining for state tribunals the highest respect, does not feel bound by their decisions."

In *Lane* v. *Vick*, 3 How. 464, 472, 476, the nature of the controversy was such as to require a construction of a will which, among other property, devised certain real estate which, at the time of suit, was within the limits of Vicksburg, Mississippi. There had been a construction of the will by the Supreme Court of the State, 1 How. (Miss.) 379, and that construction, it was insisted, was binding on the Federal court. But this court said: "Every instrument of writing should be so construed as to effectuate, if practicable, the intention of the parties to it. This principle applies with peculiar force to a will. . . . The parties in that case were not the same as those now before this court; and that decision does not affect the interests of the complainants here. The question before the Mississippi court was, whether certain grounds, within the town plat, had been dedicated to public use. The construction of the will was incidental to the main object of the suit, and of course was not binding on any one claiming under the will. With the greatest respect, it may be proper to say, that this court does not follow the state courts in their construction of a will or any other instru-

ment, as they do in the construction of statutes. Where, as in the case of *Jackson* v. *Chew*, 12 Wheat. 167, the construction of a will had been settled by the highest courts of the State, and *had long been acquiesced in as a rule of property, this court would follow it, because it had become a rule of property*. The construction of a statute by the Supreme Court of a State is followed, without reference to the interests it may affect, or the parties to the suit in which its construction was involved. But the mere construction of a will by a state court does not, as the construction of a statute of the State, constitute a rule of decision for the courts of the United States. In the case of *Swift* v. *Tyson*, 16 Pet. 1, the effect of section 34 of the Judiciary Act of 1789, and the construction of instruments by the state courts, are considered with greater precision than is found in some of the preceding cases on the same subject."

In *Foxcroft* v. *Mallett*, 4 How. 353, 379, the object of the action was to recover certain land in Maine. The case turned in part on the construction to be given to a mortgage of certain land to Williams College, and to local adjudications relating to those lands, which, it was contended, were conclusive on the parties. "But," this court said, "on examining the particulars of the cases cited to govern this (3 Fairfield, 398; 4 Shepley, 84, 88; 14 Maine R. 51), it will be seen that the construction of the mortgage to the college, in respect to this reservation or condition, never appears to have been agitated. *If it had been*, the decision would be entitled to high respect, though it should not be regarded as conclusive on the mere construction of a deed as to matters and language belonging to the common law, and not to any local statute. 3 Sumner, 136, 277."

In *Russell* v. *Southard*, 12 How. 139, 147, the controlling question was whether in any case it was admissible to show by extraneous evidence that a deed on its face of certain real estate in Kentucky was really intended by the parties as a security for a loan and as a mortgage. The court, speaking

by Mr. Justice Curtis, after citing adjudged cases sustaining the proposition that evidence of that kind was admissible in certain States, said: "It is suggested that a different rule is held by the highest court of equity in Kentucky. If it were, with great respect for that learned court, this court would not feel bound thereby. This being a suit in equity, and oral evidence being admitted, or rejected, not by the mere force of any state statute, but upon the principles of general equity jurisprudence, this court must be governed by its own views of those principles"—citing *Robinson* v. *Campbell*, 3 Wheat. 212; *United States* v. *Howland*, 4 Wheat. 108; *Boyle* v. *Zacharie* 6 Pet. 635, 658; *Swift* v. *Tyson*, 16 Pet. 1; *Foxcroft* v. *Mallett*, 4 How. 353, 379.

In *Yates* v. *Milwaukee*, 10 Wall. 497, 506, the question was as to the nature and extent of the right of an owner of land in Wisconsin, bordering on a public navigable water, to make a landing, wharf or pier for his own use or for the use of the public. There was a question in the case of dedication to public use, and the city of Milwaukee sought to change or remove the wharf erected by the riparian owner in front of his lot. This court, speaking by Mr. Justice Miller, said: "This question of dedication, on which the whole of that case turned, was one of fact, to be determined by ascertaining the intention of those who laid out the lots, from what they did, and from the application of general common law principles to their acts. This does not depend upon state statute or local state law. The law which governs the case is the common law, on which this court has never acknowledged the right of the state courts to control our decisions, except, perhaps, in a class of cases where the state courts have established, by *repeated decisions, a rule of property* in regard to land titles peculiar to the State."

In *Louisville Trust Co.* v. *City of Cincinnati*, 76 Fed. Rep. 296, 300, 304, which was a suit by a Kentucky corporation, it became necessary to determine the force and effect of a mortgage originating in a state statute of Ohio and certain

municipal ordinances covering street easements in Cincinnati. The state court, in a suit to which the trustee in the mortgage was not a party, passed a decree declaring the scope, effect and duration of contracts or ordinances under which the mortgage, easements and franchises originated. It was insisted that the Federal court was bound to accept the views of the state court. But the Circuit Court of Appeals, held by Judges Taft, Lurton, and Hammond, ruled otherwise. Judge Lurton, speaking for all the members of that court, made an extended review of the authorities, and observed that if the state decision was regarded as conclusive upon the parties, "the constitutional right of the complainant, as a citizen of a State other than Ohio, to have its rights as a mortgagee defined and adjudged by a court of the United States is of no real value. If this court cannot for itself examine these street contracts and determine their validity, effect, and duration, and must follow the interpretation and construction placed on them by another court in a suit begun *after its rights as mortgagee had accrued, and to which it was not a party*, then the right of such a mortgagee to have a hearing before judgment and a trial before execution is a matter of form without substance. The better forum for a suitor so situated would be a court of the State. . . . The validity, effect, and duration of the street easements granted or claimed under these laws and ordinances is a question which this complainant is entitled to have decided by the courts of the United States, and the opinion of the Supreme Court of Ohio, while entitled to the highest respect as a tribunal of exalted ability, can be given no greater weight or respect than its reasoning shall demand, where the contract rights of a citizen of another State are involved, who was neither a party nor privy to the suit in which that opinion was delivered. The special fact, therefore, which justifies us in determining for ourselves the true meaning and validity of the Ohio statutes and city ordinances, out of which the rights of this complainant spring, is the fact that it is a citizen of

another State, and that the contract under which it has ac-
quired an interest originated prior to the judicial opinion
relied upon as foreclosing our judgment."

Upon the general question as to the duty of the Federal
court to exercise its independent judgment where there had
not been a decision of the state court, on the question in-
volved, before the rights of the parties accrued, *Carroll
County* v. *Smith*, 111 U. S. 556, and *Great Southern Hotel Co.*
v. *Jones*, 193 U. S. 532, 548, are pertinent. In the first-named
case the court was confronted with a question as to the
validity under the state constitution of a certain statute of
the State. Mr. Justice Matthews, delivering the unanimous
judgment of the court, said (p. 563): "It was not a rule
previously established, so as to have become recognized as
settled law, and which, of course, all parties to transactions
afterwards entered into would be presumed to know and to
conform to. When, therefore, it is presented for application
by the courts of the United States, in a litigation growing out
of the same facts, of which they have jurisdiction by reason
of the citizenship of the parties, the plaintiff has a right,
under the Constitution of the United States, to the inde-
pendent judgment of those courts, to determine for them-
selves what is the law of the State, by which his rights are
fixed and governed. It was to that very end that the Con-
stitution granted to citizens of one State, suing in another,
the choice of resorting to a Federal tribunal. *Burgess* v.
*Seligman*, 107 U. S. 20, 33." The other case—*Great Southern
Hotel Co.* v. *Jones*—presented a controversy between citizens
of different States. It was sought by the plaintiffs, citizens
of Pennsylvania, to enforce *a mechanics' lien upon certain real
property* in Ohio. The main question was as to the validity
of a statute of Ohio under which the alleged lien arose. It
was contended that a particular decision of the state court
holding the statute to be a violation of the state constitution
was conclusive upon the Federal court. But this court, fol-
lowing the rules announced in *Burgess* v. *Seligman*, rejected

that view by a unanimous vote. It said (p. 548): "If, *prior to the making of the contracts between the plaintiffs and McClain,* the state court had adjudged that the statute in question was in violation of the state constitution, it would have been the duty of the Circuit Court, and equally the duty of this court, whatever the opinion of either court as to the proper construction of that instrument, to accept such prior decision as determining the rights of the parties accruing thereafter. But the decision of the state court, as to the constitutionality of the statute in question, having been rendered *after the rights of parties to this suit had been fixed by their contracts,* the Circuit Court would have been derelict in duty if it had not exercised its independent judgment touching the validity of the statute here in question. In making this declaration we must not be understood as at all qualifying the principle that, in all cases, it is the duty of the Federal court to lean to an agreement with the state court, where the issue relates to matters depending upon the construction of the constitution or laws of the State."

It has been suggested—and the suggestion cannot be passed without notice—that the views we have expressed herein are not in harmony with some recent utterances of this court, and we are referred to *East Cent. E. M. Co.* v. *Central Eureka Co.,* 204 U. S. 266, 272. That case involved, among other questions, the meaning of a deed for mining property. This court in its opinion referred to a decision of the state court as to the real object of the deed, and expressed its concurrence with the views of that court. That was quite sufficient to dispose of the case. But in the opinion it was further said (p. 272): "The construction and effect of a conveyance between private parties is a matter as to which we follow the court of the State"—citing *Brine* v. *Insurance Company,* 96 U. S. 627, 636; *DeVaughn* v. *Hutchinson,* 165 U. S. 566. Even if the broad language just quoted seems to give some support to the contention of the defendant, it is to be observed that no reference is made in the opinion to the nu-

merous cases, some of which are above cited, holding that the Federal court is not bound, in cases between citizens of different States, to follow the state decision, if it was rendered *after* the date of the transaction out of which the rights of the parties arose. Certainly there was no purpose, on the part of the court, to overrule or to modify the doctrines of those cases; and the broad language quoted from *East Cent. &c.* v. *Central Eureka Co.* must therefore be interpreted in the light of the particular cases cited to support the view which that language imports. What were those cases and what did they decide?

*Brine* v. *Insurance Company*, one of the cases cited, was a suit in the Federal Circuit Court to foreclose a mortgage on real estate. A foreclosure and sale were had, and the decree, following the established rules of the Federal court, allowed the defendant to pay the mortgage debt in one hundred days; and if the debt was not paid within that time, then the master was ordered to sell the land for cash in accordance with the course and practice of the Federal court. *When the mortgage was made* there was in force in Illinois and had been for many years, *a statute* which, if controlling, allowed the defendant, in a foreclosure suit, twelve months after sale to redeem the land sold. Thus, there was a conflict between the local statute and the rules and practice obtaining in the Federal court, and the question was whether the state statute or those rules governed the rights of the parties as to the time of redemption. This court held that the statute of the State, *being in force when the mortgage in question was executed,* entered into the contract between the parties and must control the determination of their rights. Speaking by Mr. Justice Miller, it said (p. 636): "The legislature of Illinois has prescribed, as an essential element of the transfer by the courts in foreclosure suits, that there shall remain to the mortgagor the right of redemption for twelve months, and to judgment creditors a similar right for fifteen months, after the sale, before the right of the purchaser to the title becomes vested. This

right, as a condition on which the title passes, is as obligatory on the Federal courts as on the state courts, because in both cases it is made a rule of property by the legislature, which had the power to prescribe such a rule. . . . At all events, the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, *which are in existence when it is made,* are so far a part of the contract that no change in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States. *Edwards* v. *Kearzey,* 96 U. S. 595. That this very right of redemption, after a sale under a decree of foreclosure, is a part of the contract of mortgage, where the law giving the right exists when the contract is made, is very clearly stated by Mr. Chief Justice Taney, in the case of *Bronson* v. *Kinzie,* 1 How. 311." *DeVaughn* v. *Hutchinson,* 165 U. S. 566, the other case cited, involved the construction of a will made in 1867 devising real estate in the District of Columbia, and the decision was based upon the law of Maryland as it had been often declared by the courts of Maryland to be while this District was part of that State—indeed, as it was from the time Maryland became an independent State.

It thus appears that in the *Brine case* the rights of the parties were determined in conformity with a valid local *statute in force when those rights accrued;* while in the *DeVaughn case,* the decision was based upon the law of Maryland, while the District was a part of that State, evidenced by a *series of decisions* made by the highest court of Maryland, *before the rights of parties accrued.* Nothing in this opinion is opposed to anything said or decided in either of those cases. The question here involved as to the scope and effect of the writing given by Kuhn to Camden does not depend upon any statute of West Virginia, nor upon any rule established by a course of decisions made before the rights of parties accrued. So that the words above quoted from *East Central '&c.* v. *Central Eureka Co.* must not be interpreted as applicable to

a case like the one before us, nor as denying the authority and duty of the Federal court, when determining the effect of conveyances or written instruments between private parties, citizens of different States, to exercise its own independent judgment where no authoritative state decision had been rendered by the state court before the rights of the parties accrued and became fixed.

Without expressing any opinion as to the rights of the parties under their contract, we need only say that, for the reasons stated, the question sent to this court by the Circuit Court of Appeals is answered in the negative. It will be so certified.

MR. JUSTICE HOLMES, with whom concurred MR. JUSTICE WHITE and MR. JUSTICE McKENNA, dissenting.

This is a question of the title to real estate. It does not matter in what form of action it arises; the decision must be the same in an action of tort that it would be in a writ of right.—The title to real estate in general depends upon the statutes and decisions of the State within which it lies. I think it a thing to be regretted if, while in the great mass of cases the state courts finally determine who is the owner of land, how much he owns and what he conveys by his deed, the courts of the United States, when by accident and exception the same question comes before them, do not follow what for all ordinary purposes is the law.

I admit that plenty of language can be found in the earlier cases to support the present decision. That is not surprising in view of the uncertainty and vacillation of the theory upon which *Swift* v. *Tyson*, 16 Pet. 1, and the later extensions of its doctrine have proceeded. But I suppose it will be admitted on the other side that even the independent jurisdiction of the Circuit Courts of the United States is a jurisdiction only to declare the law, at least in a case like the present, and only to declare the law of the State. It is not an authority to make it. *Swift* v. *Tyson* was justified on the ground

that that was all that the state courts did. But as has been pointed out by a recent accomplished and able writer, that fiction had to be abandoned and was abandoned when this court came to decide the municipal bond cases, beginning with *Gelpcke* v. *Dubuque,* 1 Wall. 175. Gray, Nature and Sources of the Law, §§ 535–550. In those cases the court followed Chief Justice Taney in *Ohio Life Ins. & Trust Co.* v. *Debolt,* 16 How. 416, in recognizing the fact that decisions of state courts of last resort make law for the State. The principle is that a change of judicial decision after a contract has been made on the faith of an earlier one the other way is a change of the law.

The cases of the class to which I refer have not stood on the ground that this court agreed with the first decision, but on the ground that the state decision made the law for the State, and therefore should be given only a prospective operation when contracts had been entered into under the law as earlier declared. *Douglass* v. *Pike County,* 101 U. S. 677. *Green County* v. *Conness,* 109 U. S. 104. In various instances this court has changed its decision or rendered different decisions on similar facts arising in different States in order to conform to what is recognized as the local law. *Fairfield* v. *Gallatin County,* 100 U. S. 47.

Whether *Swift* v. *Tyson* can be reconciled with *Gelpcke* v. *Dubuque,* I do not care to enquire. I assume both cases to represent settled doctrines, whether reconcilable or not. But the moment you leave those principles which it is desirable to make uniform throughout the United States and which the decisions of this court tend to make uniform, obviously it is most undesirable for the courts of the United States to appear as interjecting an occasional arbitrary exception to a rule that in every other case prevails. I never yet have heard a statement of any reason justifying the power, and I find it hard to imagine one. The rule in *Gelpcke* v. *Dubuque* gives no help when the contract or grant in question has not been made on the faith of a previous declaration of

law. I know of no authority in this court to say that in general state decisions shall make law only for the future. Judicial decisions have had retrospective operation for near a thousand years. There were enough difficulties in the way, even in cases like *Gelpcke* v. *Dubuque,* but in them there was a suggestion or smack of constitutional right. Here there is nothing of that sort. It is said that we must exercise our independent judgment—but as to what? Surely as to the law of the States. Whence does that law issue? Certainly not from us. But it does issue and has been recognized by this court as issuing from the state courts as well as from the state legislatures. When we know what the source of the law has said that it shall be, our authority is at an end. The law of a State does not become something outside of the state court and independent of it by being called the common law. Whatever it is called it is the law as declared by the state judges and nothing else.

If, as I believe, my reasoning is correct, it justifies our stopping when we come to a kind of case that by nature and necessity is peculiarly local, and one as to which the latest intimations and indeed decisions of this court are wholly in accord with what I think to be sound law. I refer to the language of the court speaking through Mr. Justice Miller in *Brine* v. *Hartford Fire Insurance Co.,* 96 U. S. 627. To administer a different law (p. 635) is "to introduce into the jurisprudence of the State of Illinois the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right." I refer also to the unanimous decision in *East Central Eureka Mining Co.* v. *Central Eureka Mining Co.,* 204 U. S. 266, 272. It is admitted that we are bound by a settled course of decisions, irrespective of contract, because they make the law. I see no reason why we are less bound by a single one.

Mr. Justice White and Mr. Justice McKenna concur in this dissent.