**BURNET, Commissioner of Internal Revenue, v. WHITCOMB.**

**No. 5664.**

Court of Appeals of the District of Columbia.
Argued March 3, 1933.
Decided May 22, 1933.

GRONER, Associate Justice, dissenting.

G. A. Youngquist, Sewall Key, Wm. Cutler Thompson, C. M. Charest, Dewitt M. Evans, and John D. Foley, all of Washington, D. C., for appellant.

Claude R. Branch, of Boston, Mass., and W. W. Spalding, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This appeal involves income taxes for the year 1921, and is prosecuted by the Commissioner of Internal Revenue from an order of redetermination of the Board of Tax Appeals.

The controversy relates to the estate of A. C. Whitcomb, deceased, a resident of the state of California, who died in the year 1889, leaving a last will which was admitted to probate by the superior court of San Francisco. The decedent left surviving him his widow, Louise P. V. Whitcomb, a daughter, Charlotte A. W. Lepic, and a son, Adolph Whitcomb. The latter died on September 5, 1914, survived by his widow, Marguerite T. Whitcomb, the respondent herein, and his children, Louise A. Whitcomb and Lydia L. Whitcomb.

Item seventh of decedent's will reads as follows: "7th. I give to my hereinafter named executor, Jerome Lincoln, of said San Francisco, all the rest of my property, real, personal, or mixed, except what I may have in France, of every kind and nature and not hereinbefore disposed of, after the payment of my debts, in trust, nevertheless, to pay over to my said wife, Louise Palmyre Vion Whitcomb, one-third part of the interest thereon or income therefrom for and during her natural life, and the other two-thirds parts to my two children, born of her:

803

One, Adolph, born on or about the 23d day of February, 1880, and the other, Charlotte Andree, born on or about the 4th day of December, 1882, with the reversion or remainder of the whole three-thirds parts to the descendants 'per stirpes' of the said two children, if any be alive at the time of the death of the said two children; and if none be alive at that time, to Harvard College, in conformity with the provisions named or indicated in section six (6) of this will, having reference to said Harvard College."

The will contains no directions as to the manner in which the income from the trust shall be computed, and makes no provision relating to depletion nor a depletion reserve fund.

Since the year 1905, James Otis has served as trustee of the trust thus created. The original trust estate consisted largely of cash, bonds, stocks, and notes. On February 23, 1906, the trust estate consisted of similar securities of a total value of more than $3,000,-000, together with certain parcels of real estate, most of which were in San Francisco. On April 18, 1906, the San Francisco earthquake and fire occurred. All of the improvements on the San Francisco real estate owned by the trust were destroyed by the fire. Some time after this the trustee adopted the policy of improving the real estate owned by the trust and of converting the other assets of the estate to accomplish that purpose. As a result of this policy and of the acquisition of additional parcels of real estate, the assets of the trust for several years prior to 1921, and during the years 1921 to 1926, inclusive, consisted almost entirely of improved real estate, including the Whitcomb Hotel and its furniture and equipment. The latter item represented an investment of more than $2,000,000.

During the years 1921 to 1926, inclusive, the trust estate suffered exhaustion, wear, and tear, as follows:

| | |
|---|---|
| 1921 | $43,003.16 |
| 1922 | 39,408.00 |
| 1923 | 39,408.00 |
| 1924 | 39,258.00 |
| 1925 | 39,108.00 |
| 1926 | 55,833.00 |

The trustee of the trust filed fiduciary income tax returns for the years 1921 to 1926, inclusive, and deducted in computing the net income of the trust for each year the respective amounts above set forth, representing exhaustion, wear, and tear sustained by the trust. The trustee, however, did not withhold these amounts or any part of the income of the trust estate from the beneficiaries to whom income payments were due, and each of them received his undiminished share of the income of the trust. From 1903 to 1928, the trustee presented an annual account of his proceedings to the beneficiaries, but did not file any account in the superior court of San Francisco, which had jurisdiction over the trust. However, on September 5, 1928, the trustee filed with the court an account covering the period from February 23, 1903, to February 23, 1928, and setting out all of the payments made to the beneficiaries during that period. This was accompanied by a petition for its allowance.

The allowance of the account was opposed by Napoleon Charles Louis Lepic and Charlotte de Rouchechouart, children of Charlotte A. W. Lepic, one of the beneficiaries herein, who are two of the remaindermen entitled to part of the corpus of the trust upon the termination thereof, if they be then living. In their objections, which were filed with the court, they alleged that the trust property had sustained depreciation during the years 1913 to 1927, inclusive, in the amount of $622,434.11; that no reserve or other provision for such depreciation had been made from the gross income of the trust estate; that such amount of $622,-434.11 had been paid by the trustee to the beneficiaries as income of the trust, thus impairing the trust property to that extent, and they prayed that the trustee be charged therewith. All of the parties interested in the trust estate were notified of the filing of the account and of the objections, and were represented by counsel at the hearing held thereon.

On September 19, 1928, the court entered an order in the matter which is in part as follows:

"It is hereby ordered, adjudged, and decreed that the objection of said Napoleon Charles Louis Lepic and Charlotte de Rochechouart to said account that no reserve or other provisions for annual depreciation for the years 1913 to 1927, both inclusive, as set forth in said objections, has been made, be, and the same is hereby, sustained; that the amount specified in said objections for each of said respective years from 1913 to 1927 is a proper amount to be allowed for depreciation, said amount for each of said respective years being as follows, to wit:

| | |
|---|---|
| 1913 | $23,751.00 |
| 1914 | 23,070.00 |
| 1915 | 23,748.00 |

| 1916 | 31,248.00 |
|---|---|
| 1917 | 41,222.83 |
| 1918 | 55,302.96 |
| 1919 | 56,273.93 |
| 1920 | 55,585.23 |
| 1921 | 43,003.16 |
| 1922 | 39,408.00 |
| 1923 | 39,408.00 |
| 1924 | 39,258.00 |
| 1925 | 39,108.00 |
| 1926 | 55,833.00 |
| 1927 | 56,214.00 |

"That James Otis, the said trustee, made the disbursements as stated in his said fourteenth account without deduction of reserves or other provision for depreciation, under and pursuant to the advice of counsel learned in the law and retained by said trustee, to the effect that under and by virtue of the terms of said trust it was the duty of said trustee to make such disbursements with such deduction; that said trustee in making said disbursements without such deduction was entitled to rely upon said advice of the said counsel, and that said disbursements were so made by said trustee in good faith and without objection on the part of either the said Napoleon Charles Louis Lepic and/or the said Charlotte de Rouchechouart, or any other person interested in said trust, and that no personal liability of any kind or nature should or does attach to said trustee or to said James Otis by reason of having made such disbursements or any of them without deductions.

"It is further ordered, adjudged, and decreed that the recipients of the income of said trust estate during the period from February 23, 1913, to February 23, 1927, repay to the said trustee the respective amounts received by them during the years 1913 to 1927, both inclusive, as set forth in said objections of the said Napoleon Charles Louis Lepic and Charlotte de Rochechouart as the respective amount which should have been retained by said trustee as a reserve for depreciation for each of said years 1913 to 1927, both inclusive.

"It is further ordered, adjudged, and decreed that from and after the year ending February 23, 1927, and until the termination of said trust, the said trustee withhold annually as a reserve for depreciation from the income from the trust property such an amount as may be proper according to the rules and regulations prescribed by the Government of the United States in connection with income-tax returns, and if there be no such rules or regulations then such an amount as may be reasonable and proper."

Thereupon, on January 17, 1929, Louise A. Whitcomb, Marguerite T. Whitcomb, Lydia L. Whitcomb, Charlotte A. W. Lepic, Napoleon Charles Louis Lepic, and Charlotte de Rochechouart, acting in conformity with the court's order, executed and delivered to the trustee their promissory notes for the amounts by which the distributions made to them exceeded the distribution which would have been made had the trustee retained a reserve for depreciation of the trust property. The notes were to bear no interest and were made payable at the termination of the trust, that is, upon the death of Charlotte A. W. Lepic.

The respondent in her return of income for the year 1921 did not include the full amount paid to her by the trustee, but omitted therefrom her proportionate share of the depreciation deducted on the fiduciary return of the estate. The Commissioner increased the income shown on the return by such proportionate share of the depreciation and determined a deficiency in tax accordingly. The Board of Tax Appeals, six members dissenting, reversed and set aside the determination of the Commissioner, who then appealed for a review by this court.

The question at issue is whether respondent, as life beneficiary under the testamentary trust aforesaid, is entitled to a deduction for depreciation of the corpus of the trust, notwithstanding that she received from the trustee her full share of the accruing income of the trust undiminished because of depreciation or otherwise. The statute involved reads as follows (Revenue Act of 1921, c. 136, § 219, 42 Stat. 227, 246):

"Sec. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including— * * *

"(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct. * * *

"(d) In cases under paragraph (4) of subdivision (a), and in the case of any income of an estate during the period of administration or settlement permitted by subdivision (c) to be deducted from the net income upon which tax is to be paid by the fiduciary, the tax shall not be paid by the fiduciary, but there shall be included in com-

puting the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, or, if his taxable year is different from that of the estate or trust, then there shall be included in computing his net income his distributive share of the income of the estate or trust for its taxable year ending within the taxable year of the beneficiary. In such cases the beneficiary shall, for the purpose of the normal tax, be allowed as credits, in addition to the credits allowed to him under section 216, his proportionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are received by the estate or trust."

The present issue may be considered first as the case stands without regard to the decision of the California court. The authorities up to that time were unanimous in support of the proposition that a life beneficiary of a trust estate is taxable upon the full amount of income actually received by or distributable to him during the taxable year, without deduction for depreciation sustained by the corpus of the trust.

In Baltzell v. Mitchell, 3 F.(2d) 428 (C. C. A. 1st), certiorari denied, 268 U. S. 690, 45 S. Ct. 510, 69 L. Ed. 1159, it was held that under the Revenue Act of 1918, § 219, subd. (d), 40 Stat. 1071, the life beneficiary of the income of a trust estate is taxable on the income actually received by or distributable to him, without deduction for losses to the capital of the estate incurred during the year. In Abell v. Tait, 30 F.(2d) 54 (C. C. A. 4th), a case presenting similar facts, a similar decision was reached.

In the case of Whitcomb v. Blair, 58 App. D. C. 104, 25 F.(2d) 528, 529, involving the same beneficiary, the same trust, and the same question as is presented in the present case, although for a prior taxable year, we held against the claim of the life beneficiary in the following terms: "The appellant as life tenant in the trust estate was entitled to receive the full one-ninth of the income therefrom, without regard to exhaustion or wear and tear of the corpus of the estate, and that is what appellant actually received from the trustee as her distributive share of the income. The trustee was not entitled to withhold any part of her share of the income of the trust estate in order to make good the exhaustion or wear and tear

of the capital assets of the estate; nor did the trustee in fact do so. Capital losses in such cases fall upon the reversioners or remaindermen, and not upon the life tenant. Therefore the payment made by the trustee to appellant was in fact and law the distributive share of the income to which she was entitled as life tenant, and consisted in no part of capital depreciation restored to her. It was therefore taxable in her hands. This conclusion is not negatived by the fact that the trustee was entitled to enter deductions for capital losses or gains in his return for the trust estate as a single entity."

In Kaufman v. Commissioner, 44 F.(2d) 144 (C. C. A. 3rd), the foregoing decision was cited with approval and the court declined to sanction a deduction to a life tenant for depreciation of buildings, part of the corpus of the trust. In Hubbell v. Burnet, 46 F.(2d) 446 (C. C. A. 8th), certiorari denied, 283 U. S. 840, 51 S. Ct. 487, 75 L. Ed. 1450, the decision in Whitcomb v. Blair, supra, was cited with approval, and the court held that, although certain amounts of depreciation were actually set aside by the trustee, their retention was unauthorized, and that they were "distributable" and accordingly were subject to tax. In Codman v. Miles, 28 F.(2d) 823, 824 (C. C. A. 4th) certiorari denied, 278 U. S. 654, 49 S. Ct. 179, 73 L. Ed. 564, the court decline to allow a deduction from the amount actually distributed to a life beneficiary on account of the exhaustion of the corpus, pointing out that such a course of action "would invite as well as permit, to an unlimited extent, subterfuges whereby those entitled to large incomes could avoid their just obligations to the government." In Codman v. Commissioner, 50 F. (2d) 763 (C. C. A. 1st), involving the same trust as in Codman v. Miles, supra, a similar conclusion was reached. In Roxburghe v. Burnet, 61 App. D. C. 141, 58 F.(2d) 693, certiorari denied, 286 U. S. 567, 52 S. Ct. 648, 76 L. Ed. 1298, and in Mary Roxburghe v. United States, 64 Ct. Cl. 223, both cases relating to the same taxpayer but to different tax years, the taxpayer claimed a deduction of 3 per cent. from income actually received by her from the trustee on account of depreciation of houses composing the trust property, and the claim was denied in both cases.

The question next arises whether the decision of the California court has made this case an exception to that rule. We think it has not. That decision does not rest upon an

interpretation of any statute of California, nor can it be said to rest upon an interpretation of the testator's will.

In American Security & Trust Company v. Payne, 33 App. D. C. 178, we held that, in construing a will for the purpose of determining whether it is the duty of the trustee thereunder to pay the entire income derived from a trust fund to the life tenant, or to make certain deductions therefrom for the benefit of the remainderman, the question involved is not to be determined by any arbitrary rule, but by ascertaining, if possible, the meaning and intention of the testator from the language employed in the creation of the trust, from the relation of the parties to each other, their condition, and the surrounding facts and circumstances of the case.

It is fair to assume in this case that, had the testator intended that the trustee should establish such a reserve fund for depreciation, there would have been apt and effective language in the will to declare that purpose. By the terms of the will the testator undertook to provide for his widow and his two children primarily. They were the principal and immediate objects of his bounty, and it is unreasonable to believe that he intended that the annual payments of income to them should be made dependent upon the vicissitudes attending the corpus of the fund. At the time of the execution of the will, the testator's assets consisted almost entirely of notes, bonds, and other like property. It was not until many years after the death of the testator that the assets were in large part converted into improved real estate and the subject of depreciation became one of present importance.

The trustee continued the control of the trust from 1903 to 1928, making annual accounts with the life beneficiaries of the trust, and it appears that during those years no action was taken to establish a reserve for depreciation; nor did the trustee during all of that period file any account of his proceedings with the probate court having jurisdiction over the trust estate. In the year 1928 for the first time, following shortly after the decision of this court in the case of Whitcomb v. Blair, supra, the trustee filed an account in the probate court, and the court ordered the trustee to establish a reserve fund for depreciation and determined the amount thereof for the years 1913 to 1927. The life beneficiaries were ordered to refund that amount to the trustee. They did this by executing promissory notes bearing no interest, and payable at the termination of the trust.

It is claimed in effect that this record conclusively establishes the right of the life beneficiaries to deduct from their income tax returns for the years 1921 to 1926, inclusive, the amounts found to be due in those years to the trustee for the reserve fund for depreciation.

We are of the opinion, however, that the order of the probate court made in the settlement of the trustee's account is not sufficient authority to overcome the general rule theretofore established under the federal income tax law. There are many decisions showing the mutual respect exhibited by the federal and state courts in dealing with one another's decisions. It seems needless in this case to enter into a discussion of them, for in our opinion the bare statement of the facts in this case shows that we may without disrespect to the California probate court follow the ruling which this court, respecting this identical trust, reported prior to the decision of that court, and which has since been approved and adopted by the other federal courts above named.

In Ford v. Commissioner, 51 F.(2d) 206, 207 (C. C. A. 6th), certiorari denied, 284 U. S. 666, 52 S. Ct. 41, 76 L. Ed. 564, it appeared that the executors of an estate which consisted mostly of stocks made a partial distribution in 1920 of the stocks and the legatees received the dividends therefrom in 1922. The probate court in 1926 held the distribution to be premature and ordered the legatees to account for the principal and income of the stocks from the date of distribution up to December 31, 1922. The matter was handled entirely by book entries. The court in passing upon the matter said, in part: "We think these 1922 dividends were taxable income received by the petitioners during that year. Certainly they then had complete legal title to the stock and to the dividends. If taxes regularly assessed could be invalidated, an indefinite number of years later, by a consent judgment purporting to vacate the title of the taxpayer to the fund he had reported as income, the necessary system of tax collection would be much impaired. The true normal criterion to be applied in this class of case is the actual receipt and retention during the year in question of what was then considered to be income, not whether the taxpayer exposed himself to possible personal liability."

In Fidelity & Columbia Trust Company v. Lucas (D. C.) 52 F.(2d) 298, 301, the

court said: "Furthermore, it is well settled that a decision of a state court, establishing a local rule of property or, construing a state statute or a contract made after the rights of a litigant in a federal court suit had accrued, and in a case to which he was not a party, is not binding upon the federal court." See, also, Kuhn v. Fairmont Coal Company, 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228.

Our conclusion herein follows the opinion of the Circuit Court of Appeals for the Ninth Circuit in the case of Commissioner v. Freuler, 62 F.(2d) 733, 734, decided January 9, 1933, which related to the identical issue now before us. In respect to the decision of the California court, it says: "The respondent urges that as the orders of the probate court requiring the amounts of the depreciation reserve so paid to respondent's decedent be repaid to the trust estate, they are binding upon the federal courts in determining what are proper deductions to be made under the income law. In this connection we must not forget that we are now considering the application of a federal income taxing statute to the objections and rights of parties in a testamentary trust of real property, and not the question of the construction of a state statute or rule of property rights by the highest court of the state. We have here the consideration of orders of the probate court made after hearing objections of the remaindermen to the trustee's account. The account covered the period from 1903 to 1928 and was filed on September 5, 1928. These orders were made on September 19, 1928, some six years after the taxable year 1921. * * * However, no orders of the probate court, the effect of which would relate to what are deductions to be allowed under the national income taxing law, are conclusive and binding on the federal courts when in considering a revenue act, and the duty of such courts is to exercise its own independent judgment."

In our opinion, therefore, the decision of the Board of Tax Appeals was erroneous; it is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

GRONER, Associate Justice (dissenting).

I am unable to agree, and I shall state the reasons of my dissent briefly.

The question at issue is controlled by the provisions of section 219 of the Revenue Act of 1921 (42 Stat. 246). Subdivision (d) of that section imposes a tax on the net income of each beneficiary of an estate or trust received in the taxable year "which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not. * * * "

Fairly construed, I think it cannot be doubted that the true test of liability depends upon whether the income is distributable. If it is, it is taxable whether received or not. If it is not, it would seem to me to follow that it is nontaxable, even though received, as, for instance by mistake. If I have correctly stated the rule, then it follows that in this case the decision would turn on the question whether the income sought to be taxed was properly distributable to the taxpayer.

In Whitcomb v. Blair, referred to in the opinion of the court, there was agreement between both parties that the taxpayer was entitled to the sums received and taxed, and on that basis we held the taxpayer was "in fact and in law" entitled to receive the income which was taxed. After our decision, two of the remaindermen filed timely objections to the trustee's account. The superior court of California having jurisdiction of the trust, all parties in interest being then before the court, entered a decree charging the beneficiaries, including taxpayer, in the amount of $622,000 on the ground that that amount, representing depreciation for the years 1913 to 1927, had been unlawfully paid to them by the trustee, and also directing the trustee to withhold annually thereafter for depreciation a reasonable and proper amount from the income of the trust property. One of the beneficiaries paid in cash his share of the amount required to be returned to the trustee, but the others, including taxpayer, gave the trustee their notes bearing interest and payable at the termination of the trust. The acceptance of the notes was apparently with the consent of the remaindermen.

The case, therefore, is one in which a state court having jurisdiction of the estate and of the parties has decreed that the taxpayer was not entitled to certain portions of the income received by her over a period of years, including the year involved here, and that the sum so improperly received should be returned to the trustee, and the court's order has been obeyed. If, therefore, the statute taxes only the income properly received, and if the final decree of the state court is in accordance with the California law, as I think it is, and is therefore conclusive and binding, as it seems to me it is (Keith v. Johnson, 271 U. S. 1–8, 46 S. Ct. 415, 70 L. Ed. 795), it would follow necessarily that the

final decree of that court forecloses the question.

In this aspect there remains only the question whether the decree of the state court was obtained in a collusive suit. There is nothing in the record to sustain a contention of that sort.

I think, therefore, the decision of the Board of Tax Appeals should be affirmed.